# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA DELUCA<br><br>Plaintiff,<br>v.<br><br>SIMMONS MANUFACTURING CORPORATION, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:07-cv-2143<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Two motions, Plaintiff Cynthia DeLuca's Motion for Summary Judgment (Doc. 34) and Defendant Simmons Manufacturing Corp., Inc.'s First Motion for Summary Judgment (Doc. 38), are currently before the Court. For the reasons set forth in greater detail below, the Court will strike Defendant's Motion for Summary Judgment as untimely, and will grant, in part, and deny, in part, Plaintiff's Motion for Summary Judgment.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The Defendant, Simmons Manufacturing Corp., Inc. ("Simmons") is a manufacturer of premium branded bedding products and operates a manufacturing plant in Hazleton Industrial Park, Hazleton, Pennsylvania.. (Pl.'s Am. SOF, Doc. 66, ¶¶ 1, 5; Def.'s SOF, Doc. 39, ¶¶ 1, 2.)[1] Plaintiff Cynthia Ann DeLuca ("DeLuca") was hired as a line seamstress at

---

[1] The Defendant did not submit an answer to Plaintiff's Statement of Facts. Defendant did, however, file a Motion to Strike Plaintiff's Statement of Facts (Doc. 41), which was granted, in part, by the Court on April 23, 2009. The Defendant also submitted a Statement of Facts (Doc. 39) in support of its First Motion for Summary Judgment (Doc. 38) that the Court will strike from the record as untimely. *See* timeliness discussion, *infra* pp. 6-8. Accordingly, the Court will liberally construe Defendant's Statement of Facts as its opposing statement of material facts as required by Middle District of Pennsylvania Local Rule 56.1.

Simmons' Hazleton facility on January 3, 2006. (Pl.'s Am. SOF ¶ 22; Def.'s SOF ¶ 3.)

For the first year of her employment, DeLuca worked without incident. (Def.'s SOF ¶ 15.) However, in February 2007, DeLuca experienced pain in her hip, running into her leg, when she attempted to lift a bolt of fabric. (Pl.'s Am. SOF ¶ 28; Def.'s SOF ¶ 17.) Upon experiencing this pain, DeLuca sat down to rest. (Def.'s SOF ¶ 18.) While she was sitting, DeLuca was questioned by her supervisor, Mr. Joe Gasaway, why she was sitting and DeLuca explained that she had experienced pain while performing her work duties. (Pl.'s Am. SOF ¶ 30; Def.'s SOF ¶ 18.) Mr. Gasaway advised DeLuca to return to work and DeLuca followed this advice. (Def.'s SOF ¶ 19.) Plaintiff continued to experience pain in her hip and leg following this initial incident. (Def.'s SOF ¶ 20.)

Following the initial injury, DeLuca sought medical attention for pain in her right hip. (Pl.'s Br. in Supp., Doc. 36, at 2; Def.'s SOF ¶¶ 23-27.) While she was receiving treatment in March 2007, DeLuca, called off of work on several consecutive days. (Pl.'s Br. in Supp., at 3; Def.'s SOF ¶ 21.) When calling off work on the fourth consecutive day, DeLuca spoke with Ms. Doreen Rushton, the Human Resources Director for Simmons' Hazleton facility, and reported both her injury and ongoing treatment. (Pl.'s Am. SOF ¶¶ 30, 32; Def.'s SOF ¶ 22; Pl.'s Br. in Supp., at 2.) During the course of the call, Ms. Rushton informed DeLuca that she would receive, and should complete and return, paperwork for leave under the Family and Medical Leave Act ("FMLA"). (Def.'s SOF ¶ 23; Pl.'s Br. in Supp., at 2.) On April 5, 2007, Ms. Rushton sent DeLuca a letter stating that Simmons had not heard from DeLuca since March 26, 2007 and requested that DeLuca submit her FMLA paperwork by April 19, 2007. (Pl.'s Am. SOF ¶ 36; Def.'s SOF ¶ 25.) DeLuca submitted the completed FMLA paperwork along with a healthcare provider certification completed by her physician on April

2

30, 2007. (Pl.'s Am. SOF ¶ 37; Def.'s SOF ¶ 26.) After approximately ten (10) weeks of FMLA leave, DeLuca's physician released her to work without any restrictions. (Pl.'s Am. SOF ¶¶ 40, 50; Def.'s SOF ¶ 28.)

After returning to her position at Simmons, DeLuca worked without incident until July 11, 2007. (*Id.*) Plaintiff did not go to work on July 11, 12, and 13, 2007. (Def.'s SOF ¶¶ 29-31; Pl.'s Br. in Supp., at 3-4.) On these dates, DeLuca called Simmons' "work call off line" to inform the company that she was seeking treatment with her physician and waiting for medical approval to return to work. (Pl.'s Br. in Supp., at 4; Def.'s SOF ¶ 30, 31.) Plaintiff did not go to work and did not call Simmons' "work call off line" on both July 16 and 17, 2007. (Def.'s SOF ¶¶ 35, 36.) On July 17, 2007, Ms. Rushton sent DeLuca a letter stating that Ms. DeLuca had not reported to work since July 13, 2007 and that she had fifteen (15) days to submit paperwork concerning FMLA leave. (Pl.'s Br. in Supp., at 4; Def.'s SOF ¶ 37.) On July 18 and 19, 2007 Ms. DeLuca did not report for work and did not contact Simmons. (Def.'s SOF ¶¶ 40, 41.) On July 19, 2007 Simmons terminated Ms. DeLuca's employment. (Def.'s SOF ¶ 42; Pl.'s Br. in Supp., at 4.)

On November 26, 2007, Ms. DeLuca filed her Complaint (Doc. 1) initiating the current action. Count I of this Complaint alleges that Simmons violated the FMLA by denying DeLuca's leave request and terminating her employment in July 2007. (Compl. ¶¶ 31-35.) Count II of DeLuca's Complaint alleges that Simmons wrongfully terminated her in violation of the Pennsylvania Worker's Compensation Act. (Compl. ¶¶ 36-38.) Defendant Simmons filed its Answer (Doc. 5) to DeLuca's Complaint on December 26, 2007, and the parties proceeded with discovery. On July 30, 2008, the Court issued a Second Amended Case Management Order (Doc. 32). This Order established a October 15, 2008 deadline for the

completion of discovery and a November 15, 2008 deadline for the filing of all dispositive motions and supporting briefs. (*Id.*)

On November 14, 2008, Plaintiff DeLuca filed a Motion For Summary Judgment (Doc. 34) along with a corresponding Brief in Support (Doc. 36) and Statement of Material Facts (Doc. 36, Ex. 2). On November 25, 2008, Defendant Simmons filed a Motion to Strike (Doc. 41) Plaintiff's statement of facts and brief supporting her summary judgment motion. Defendant also filed its Brief in Opposition (Doc. 43) to Plaintiff DeLuca's summary judgment motion on November 25, 2008. On November 29, 2008 Plaintiff DeLuca filed a Brief in Opposition (Doc. 48) to Defendant's Motion to Strike, and, on December 9, 2008, she filed her Reply Brief (Doc. 47) in support of her summary judgment motion. On April 23, 2009, the Court entered an Order (Doc.65) granting, in part, Defendant's Motion to Strike Plaintiff's Statement of Facts, and struck the portions of Plaintiff's Statement detailing various discovery-related disputes between the parties. The Court instructed Plaintiff to file a redacted copy of her Statement of Facts, omitting the stricken portions of the original document, and the Plaintiff complied by submitting her Amended Statement of Facts on April 26, 2009 (Doc. 66). Thus, Plaintiff's Motion for Summary Judgement has been thoroughly briefed and is ripe for disposition.

On November 18, 2008, three (3) days after the November 15, 2008 deadline for dispositive motions, Defendant Simmons filed its First Motion for Summary Judgment (Doc. 38), along with a Statement of Facts (Doc. 39) and corresponding Brief in Support (Doc. 40). On November 29, 2008 Plaintiff DeLuca filed a Brief in Opposition (Doc. 44) and an Answer to Simmons' Statement of Facts (Doc. 45). Defendant Simmons filed its Reply Brief (Doc. 49) on December 9, 2008, and filed a Supplement (Doc. 52) to its previously-filed Brief in

4

Support on February 11, 2009. Accordingly, Defendant's First Motion for Summary Judgment has also been thoroughly briefed and is currently ripe for disposition.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable

5

to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**I.     Defendant Simmons' First Motion for Summary Judgement**

Defendant Simmons Manufacturing Corporation filed its First Motion for Summary Judgment (Doc. 38) that is currently before the Court on November 18, 2008. Plaintiff, in her Brief in Opposition (Doc. 44) correctly notes that Simmons' motion was filed after the November 15, 2008 deadline for dispositive motions established by the Court's July 30, 2008 Order (Doc. 32 ). Plaintiff, accordingly, argues that the Court should strike Simmons' First Motion for Summary Judgement and impose sanctions against Simmons for its failure to comply with the Court's Order. (Pl.'s Br. in Opp., Doc. 44, at 1-3.) In the alternative, Plaintiff DeLuca's Brief in Opposition also presents arguments with respect to the merits of Simmons' motion. (*Id.*, 3-17.) Simmons did not respond to Plaintiff's timeliness arguments in its Reply Brief (Doc. 49).

6

The Federal Rules "ensure that district courts have tools available to protect their truth-seeking process. . . [and] allow district courts to sanction parties who fail to meet minimum standards of conduct in many different contexts." *Republic of the Philippines v. Westinghouse Electric Corp.*, 43 F.3d 65, 73 (3d Cir. 1994). Moreover, the United States Supreme Court has affirmed that "a district court has inherent authority to impose sanctions upon those who would abuse the judicial process." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Court, however, recognizes that it must exercise these powers "with restraint and discretion." *Id.* (quoting *Chambers*, 501 U.S. at 44.) Even though Simmons' First Motion for Summary Judgment was filed after the November 15, 2008 deadline for dispositive motions, the Court does not find any evidence of bad faith, improper purpose, harassment, or intent to cause delay or increased expense in the current litigation. Without further explanation, the Court will assume that Defendant's untimely filing was the result of an oversight by Defendant's counsel and will deny Plaintiff's request for sanctions.

While the it does not discern any improper purpose in Defendant's untimely filing, the Court is also unable to discern any reason to consider a motion filed in disregard of a clear and unambiguous deadline. The Court notes that November 15, 2008 was a Saturday and recognizes that a weekend deadline may be a cause of confusion and may result in motions being filed on the first weekday following the weekend date. In this case, however, Defendant did not file its motion on the next available weekday, November 17, 2008, but waited an additional day until November 18, 2008 to file the present motion. Moreover, the Defendant offered no explanation for this post-deadline filing in its Reply Brief (Doc. 49) even though Plaintiff's Brief in Opposition of Defendant's motion presented substantial arguments concerning the motion's untimeliness and a request for sanctions. Having been provided no

7

alternative explanation, the Court finds that the Defendant simply disregarded the deadline for filing dispositive motions set in the Court's July 30, 2008 Order. For this reason, the Court will strike Defendant's First Motion for Summary Judgment (Doc. 38) as untimely.

**II.     Plaintiff's Motion for Summary Judgment**

    **A.     DeLuca's FMLA Claim**

Count I of Plaintiff DeLuca's Complaint articulates two distinct claims under the FMLA. First, DeLuca alleges that Simmons interfered with her right to FMLA leave. Second, DeLuca alleges that Simmons terminated her employment as retaliation for her attempts to take FMLA leave.

    1.     Interference

> The FMLA grants eligible employees the right to take up to twelve workweeks of leave in any twelve-month period if a "serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA also provides that it shall be unlawful for an employer to interfere with, restrain, or deny an employee's exercise of or attempt to exercise that right. 29 U.S.C. § 2615(a)(1). In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

*Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). "In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). An "employer cannot justify its actions by establishing a legitimate business purpose for its decision" *Id.*, at 119-120. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Id.*, at 120;

*see also Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1219 (S.D. Cal. 1998) ("The FMLA is a strict liability statute in the sense that an employee need not delve into the employer's subjective intent to recover for alleged violations for interference."). In the current case, DeLuca claims that Simmons interfered with her rights under the FMLA by terminating her employment without allowing her sufficient time to apply for FMLA leave.

An employee seeking leave under the FMLA "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). "It is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient. . .." *Sarnowski*, 510 F.3d at 402. Moreover, when "providing notice, the employee need not use any magic words." *Id.* Rather, the employee providing notice of anticipated leave must only provide his or her "employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." *Id.*

In the brief supporting her current Motion for Summary Judgment, Plaintiff DeLuca states that she followed company policy and called Simmons' "work call-off line" to report the recurrence of her serious medical condition prior to her July 2007 absence from work. Plaintiff DeLuca further argues that "[g]iven that [she] had recently returned from 10 weeks of FMLA leave (with which Ms. Rushton was quite familiar. . .), this notice was sufficient for Simmons to reasonably interpret that Ms. DeLuca's absence was FMLA qualifying." (Pl.'s Br. in Supp., Doc. 36, at 8.) In support this argument, Plaintiff DeLuca first cites to the record of her call to the Simmons "work call-off line," which notes that she called off work "per

9

doctor's approval." (July 12, 2007 Call-off Report, Doc. 36, Attach. 1, Ex. M.) Plaintiff further notes that, on July 17, 2007, Ms. Rushton sent Plaintiff DeLuca a letter with FMLA paperwork and instructions attached. (July 17, 2007 Letter, Doc. 36, Attach. 1, Ex. N.)

Finally, Plaintiff argues that Simmons did not properly inquire about the reason why DeLuca was calling off work in July 2007, even though the Plaintiff notified Simmons that she was receiving treatment from a doctor. (Pl.'s Br. in Supp., at 10-11.) Plaintiff acknowledges that she received the July 17, 2007 letter from Ms. Rushton requesting further information and certification from her doctor, but states that "[r]ather than provide Ms. DeLuca time to complete the paperwork. . . Simmons terminated Ms. DeLuca's employment two days later." (*Id.,* at 11.) In support of this argument, DeLuca refers to Ms. Rushton's deposition testimony, in which Ms. Rushton states that she did not make any inquiries regarding why Plaintiff called off work per her physician's approval. (*See* Rushton Dep. Tr., Doc. 36, Attach. 1, Ex. C, at 140:6-15.) On the basis of this argument, Plaintiff states that "Simmons failed in its legal obligation to 'inquire further of the employee. . . and obtain the necessary details of the leave to be taken.'" (Pl.'s Br. in Supp., at 11) (quoting 29 CFR § 825.302(c)).

In response, Defendant Simmons states that "Plaintiff did not provide sufficient notice to Simmons of her need for FMLA leave and, therefore, Simmons had no obligation to allow fifteen (15) days for Plaintiff to provide a Healthcare Provider Certification form." (Def.'s Br. in Opp., Doc. 43, at 2.) In particular, Simmons argues that the July 12, 2007 call-off report (Doc. 36, Attach. 1, Ex. M) imparts only that the Plaintiff was "out per doctor's approval" and would return the following day. (Def.'s Br. in Opp, at 3.) According to Simmons, "[t]his information is insufficient to place Simmons on notice of Plaintiff's need for FMLA leave." (*Id.*)

10

Based on its review of the presented evidence, the Court finds that there is no question of material fact that would allow a reasonable jury to determine that, in July 2007, DeLuca did not provide Simmons with reasonably adequate information under the circumstances to understand that her absence from work would potentially qualify for FMLA leave. The Court notes that, as pointed out by the Defendant, the July 12, 2007 call-off report does not specifically mention FMLA leave, provides little or no detail concerning the nature of the illness or injury causing the Plaintiff to miss work that particular day, and indicates that Ms. DeLuca would return the following day. While this document, standing alone, could lead to various interpretations as to whether DeLuca's call to Simmons' work call-off line did or did not provide sufficient notice under the applicable FMLA standards, the Court need not engage in such interpretations because Ms. Doreen Rushton, Simmons' Human Resources Manager, clearly indicated in her July 17, 2007 letter to Plaintiff that "Short Term Disability (STD) and Family Medical Leave (FMLA) could both apply to [Plaintiff's] leave at the same time." (July 17, 2007 Letter, Doc. 36, Attach. 1, Ex. N.) In her deposition, Ms. Rushton stated that she was aware that DeLuca had called off of work "per doctor's approval" and sent DeLuca the July 17, 2007 letter and accompanying paperwork in order to determine if DeLuca's absence was FMLA-related. (Rushton Dep. Tr., at 148:7-17.) Accordingly, the Court, believes Simmons' response to DeLuca's July 12, 2007 call to the work call-off line clearly indicates that Simmons had been alerted that DeLuca's absence from work was for a medical condition and that there was a possibility DeLuca's absence would qualify for FMLA leave.

Since the evidence shows, without question, that DeLuca provided Simmons with reasonably adequate information under the circumstances to understand that her absence

11

was potentially due to an FMLA-qualifying medical condition, Simmons had a legal duty to "inquire further of [DeLuca] . . .and obtain the necessary details of the leave to be taken." 29 CFR § 825.302(c). The Court finds that Simmons made such a request for further information when Ms. Rushton sent DeLuca the July 17, 2007 letter and accompanying FMLA paperwork. Accordingly, DeLuca was required to "provide the requested certification to [Simmons] within 15 calendar days after [Simmons'] request, unless it [was] not practicable under the particular circumstances to do so despite [DeLuca's] diligent, good faith efforts . . .." 29 CFR § 825.305(b). In this case, however, Simmons terminated Ms. DeLuca's employment on July 19, 2007, just two (2) days after Ms. Rushton sent the July 17, 2007 letter requesting information for FMLA purposes. Accordingly, the Court finds that Simmons' termination of DeLuca's employment interfered with, restrained, and denied DeLuca's efforts to seek FMLA leave in July 2007, and will grant her Motion for Summary Judgment with respect to her FMLA interference claim.

### 2. Retaliation

Subsection 825.220(c) of the FMLA regulations states that "[t]he Act's prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 CFR § 825.220(c). In order to be successful on a claim that Simmons retaliated against her for her exercise of FMLA rights, DeLuca "must show that (1) [she] took an FMLA leave, (2) [she] suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). The difference between FMLA discrimination and interference claims "is that the first type of claim *requires proof of discriminatory or retaliatory intent* while the

12

latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)(emphasis added). In the current case, both parties agree that Ms. DeLuca took approximately ten (10) weeks of FMLA leave in March and April of 2007. Furthermore, the parties do not dispute that Plaintiff DeLuca suffered an adverse employment decision when her employment was terminated on July 19, 2007. Thus, the only remaining question before the Court, with respect to this claim, is whether the adverse employment decision was causally related to DeLuca's leave.

Simmons contends that DeLuca's employment was terminated because she violated the company's work call-off rule, and DeLuca makes three arguments in response. First, DeLuca argues that Simmons terminated her before she had a chance to complete the FMLA paperwork Simmons provided with the July 17, 2007 letter, and that Simmons did not follow its own FMLA-related policies or the pattern established during Ms. DeLuca's March 2007 FMLA leave period. (Pl.'s Br. in Supp., at 14.) Second, DeLuca argues that Simmons did not apply its apply its attendance policy at the time her employment was terminated in July 2007, even though the circumstances were substantially similar to the circumstances surrounding her March 2007 absence and FMLA leave when Simmons did not terminate her employment or invoke its attendance policy. (*Id.*, at 14-15.) Finally, DeLuca argues that Simmons failed to make any attempt at determining the reason for her absence, even though Simmons knew she was missing work for a medical reason, and even though Simmons had made such inquires in the past. (*Id.*, at 15-16.)

In response to DeLuca's arguments, Simmons, once again, argues that DeLuca did not provide sufficient notice of her need for FMLA leave, and that without this notice,

13

Simmons had no obligation to permit her fifteen (15) days to submit a Healthcare Provider Certification form. Simmons also argues that it did apply its attendance policy and discharged DeLuca in accordance with this policy. (Def.'s Br. in Opp., at 4.) Simmons also states that it made several attempts to contact DeLuca to determine the reason for her absence. (*Id.*) In particular, Simmons notes that Ms. Rushton stated in her deposition that, prior to discharging DeLuca, she called DeLuca on both July 17 and July 18, and also asked DeLuca's supervisor, Mr. Gasaway, and the receptionist if they had heard from DeLuca. (*Id.*)

Based on its review of the evidence presented, the Court finds that a significant question of material fact remains as to whether Simmons' decision to terminate DeLuca's employment was causally connected to DeLuca's FMLA activities. As already discussed in detail in this Memorandum's prior section, Simmons' July 17, 2007 letter to DeLuca eliminates any question of material fact as to whether DeLuca provided Simmons with sufficient notice that her absence would potentially qualify for FMLA leave, and the parties do not dispute that DeLuca was terminated just two days after Simmons provided her with FMLA paperwork. The Court observes, however, that notice of DeLuca's pending, potentially FMLA-qualifying leave, combined with Simmons' termination of DeLuca's employment before expiration of the fifteen (15) day FMLA response period, does not, by itself, establish that Simmons' termination of DeLuca's employment was causally connected to her FMLA activities or that Simmons acted with discriminatory or retaliatory intent. *See Conoshenti*, 364 F.3d at 146; *Kauffman*, 426 F.3d at 884.

In its review of DeLuca's argument that Simmons did not follow its internal policies when terminating her employment, the Court notes that DeLuca cites to Simmons' Attendance Policy for the Hazleton facility (Doc. 36, Attach. 1, Ex. Q.). Simmons, in contrast,

14

cites to Ms. Rushton's deposition testimony, in which she states that DeLuca was terminated because she failed to comply with this policy. Neither party, however, provides the Court with any detailed accounting of how the workdays missed by DeLuca in July 2007 were interpreted under the Attendance Policy's "point system," and neither party details whether DeLuca had accumulated any "absence points" prior to the July 2007 dates at issue here. As such, the parties simply rely on their own, competing statements that Simmons either did or did not follow its attendance policy when terminating DeLuca's employment, and the Court finds that these competing arguments are evidence of an unresolved issue of material fact.

Similarly, DeLuca and Simmons present contrasting arguments concerning Ms. Rushton's efforts to contact DeLuca in order to determine the nature of her absence from work in July 2007. In support of her arguments, DeLuca cites to a portion of Ms. Rushton's deposition in which she states that she did not understand what DeLuca meant when she called off work "per doctor's approval," and that she did not further investigate what was meant by this statement. In contrast, Simmons also cites portions of Ms. Rushton's deposition testimony in which she states that she attempted to contact DeLuca on two occasions prior to terminating her employment. With the exception of this ostensibly contradictory testimony, neither party provides any evidentiary support of its arguments on this ground, and as a result, the Court finds that significant questions of material fact remain as to whether Simmons made efforts to determine why DeLuca was absent from work in July 2007.

Accordingly, the Court finds that significant questions of material fact remain that would allow a reasonable jury to find either the presence or lack of a causal relationship between DeLuca's FMLA activities and the termination of her employment. As such,

15

summary judgment is not appropriate with respect to DeLuca's claim that Simmons retaliated against her because of her attempts to take FMLA leave, and the Court will deny her motion in this regard.

**B.      Pennsylvania Workers Compensation Act Claim**

Count II of DeLuca's Complaint alleges that Simmons terminated her employment because she sought medical leave for her work-related injury. (Compl., Doc. 1 ¶ 37.) According to DeLuca, Simmons' actions violated Pennsylvania public policy and constitute wrongful termination. (*Id*. ¶ 38.) In her Brief in Support of her Motion for Summary Judgment, DeLuca further argues that "the record shows that Ms. DeLuca reported her work injury to Simmons, Simmons avoided its obligations under the Pennsylvania Worker's Compensation Act, and that Simmons terminated Ms. DeLuca's employment in retaliation for taking lawful leave and seeking worker's compensation." (Pl.'s Br. in Supp., at 17.)

The Pennsylvania Worker's Compensation Act ("WCA") "prohibit[s] an employer from retaliating against an employee because the employee exercised her rights under the statutes. . .." *Reifer v. Colonial Intermediate Unit 20,* 462 F. Supp. 2d 621, 638 (M.D. Pa. 2006)(citing *Dunsmuir v. May Dep't. Stores Co.*, 120 Fed.Appx. 927, 929 (3d Cir. 2005); Griesbaum v. Aventis Pharm., No. 3:CV-04-1726, 2006 U.S. Dist. LEXIS 68710 at *10-11 (M.D. Pa. Sept. 25, 2006)). "The Pennsylvania Supreme Court has not articulated a test for WCA retaliation; consequently, the Third Circuit and the district courts in Pennsylvania apply the Title VII retaliation analysis." *Id*., at 639 n. 9 (citing *Dunsmuir*, 120 Fed.Appx. at 929; *Landmesser v. United Air Lines, Inc.*, 102 F.Supp.2d 273, 277-78 (E.D. Pa. 2000); *Griesbaum*, 2006 U.S. Dist. LEXIS 68710 at *11). Thus, "[t]o establish a *prima facie* case of retaliation in violation of . . . the WCA, the plaintiff must show that she engaged in an

16

activity protected under . . . the statute[]; she suffered an adverse employment decision; and, the adverse decision was causally related to the exercise of her. . .WCA rights." *Id.* at 639.

In response to Plaintiff DeLuca's argument that her employment was terminated in retaliation for her efforts to obtain worker's compensation benefits, Simmons notes that "her discharge predated her filing of a Worker's Compensation claim by approximately six (6) months. . .." (Def.'s Br. in Opp., at 4-5.) Accordingly, Simmons argues that "there can be no causal connection between Plaintiff's protected activity and her discharge." (*Id.* at 5.) In reply, DeLuca states that "Simmons violated Pennsylvania law when it interfered with Ms. DeLuca's rights to workers' compensation. . . in March 2007 when she reported her work injury to Mr. Gasaway and to Ms. Rushton and Simmons failed to take steps required under the Worker's Compensation Act to provide her with the appropriate coverage." (Pl.'s Br. in Reply, Doc. 47, at 6.) DeLuca further argues that she "suffered further damages when Simmons terminated her employment in retaliation because she had sought workers' compensation." (*Id.*)

Although Plaintiff states in her Reply Brief and Brief in Support that the record in this case supports her claims and arguments, she cites to no specific pieces of evidence or testimony and relies on summary, conclusory statements to support her claims. Similarly, even though Simmons cites to evidence showing that DeLuca was not subject to retaliation for filing a workers' compensation claim six (6) months after having her employment terminated, Simmons also fails to cite any evidence relevant to DeLuca's claims that she endeavored to obtain workers' compensation benefits in March 2007 and that her July 2007 termination was in retaliation of those efforts. As such, the Court finds that significant questions of material fact remain as to whether Simmons' decision to terminate DeLuca in

17

July 2007 is causally related to her alleged March 2007 attempt to receive workers compensation benefits. Accordingly, Plaintiff DeLuca's Motion for Summary Judgment will be denied with respect to Count II of her Complaint.

## CONCLUSION

For the reasons discussed above, the Court will strike Defendant's Motion for Summary Judgment (Doc. 38) as untimely. The Court will also grant, in part, and deny, in part, Plaintiff's Motion For Summary Judgment (Doc. 34). Plaintiff's motion will be granted with respect to her Count I claim that Defendant Simmons interfered with her ability to obtain FMLA leave. Plaintiff's motion will be denied with respect to her Count I claim that Defendant Simmons terminated her employment in retaliation for DeLuca's FMLA activities. Plaintiff's motion will also be denied with respect to her Count II claim that Defendant Simmons interfered with her ability to receive workers' compensation benefits under Pennsylvania Law.

 April 29, 2009  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA DELUCA | CIVIL ACTION NO. 3:07-cv-2143 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| SIMMONS COMPANY, | |
| Defendant. | |

## ORDER

**NOW**, this 29th day of April, 2009, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (Doc. 34) is **GRANTED** in part and **DENIED** in part as follows:

    a. Plaintiff DeLuca's motion is **GRANTED** with respect to her Count I claim that Defendant Simmons interfered with her right to take leave under the Family Medical Leave Act;

    b. Plaintiff DeLuca's motion is **DENIED** with respect to her Count I claim that Defendant Simmons retaliated against her for her efforts to take leave under the Family Medical Leave Act;

    c. Plaintiff DeLuca's motion is **DENIED** with respect to her Count II workers' compensation claim.

(2) Defendant's First Motion for Summary Judgment (Doc. 38) is **STRICKEN** from the record as untimely.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge